CARMEN MÉNDEZ CORRADA y OTRO, Demandantes y recurrentes, *v.* LADI'S PLACE y la CORPORACIÓN INSULAR DE SEGUROS, demandados y recurridos; LADI'S PLACE y la CORPORACIÓN INSULAR DE SEGUROS, terceros demandantes y recurridos, *v.* NEWPORT SEAFOOD, INC., tercera demandada.

*Número:* RE-90-541          *Resuelto:* 26 de noviembre de 1990

*Enrique J. Mendoza Méndez,* abogado de los recurrentes; la parte recurrida no compareció.

## RESOLUCIÓN

A la anterior solicitud de revisión, no ha lugar.

Lo acordó el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García emitió voto concurrente.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

## — O —

Voto concurrente del Juez Asociado Señor Negrón García.

"[L]a realidad científica, al igual que los factores sociales contemporáneos que circundan la vida del derecho . . . no pueden ser descartados por los tribunales en abono de un estado negatorio de la realidad de las cosas . . . ." *Moreno Álamo v. Moreno Jiménez*, 112 D.P.R. 376, 378 (1982).

Por tal fundamento, coincidimos con la negativa de este Foro a expedir e intervenir con la elaborada sentencia del Tribunal Superior, Sala de Guayama (Hon. Héctor Brull Cestero, Juez), que declaró sin lugar una demanda de daños por el envenenamiento con un pescado tóxico de "ciguatera". Expongamos lo que incontrovertidamente demostró la prueba.

I

*Primero,* se estableció que la intoxicación por ciguatera es un problema mundial grave, en particular en zonas tropicales. Su envenenamiento se distingue de aquel causado por bacterias, las cuales surgen por el consumo de pescado dañado por prácticas inadecuadas de manejo y procesamiento. Las investigaciones científicas indican que la ciguatera es causada por unos pequeños organismos (dinoflagelados) —mayormente en regiones tropicales— que "son consumidos por peces pequeños y la toxina es acumulada, a través de la cadena alimenticia, hasta llegar a los peces de mayor tamaño que son consumidos por los humanos".[1] Anejo 6, pág. 16.

*Segundo,* la toxina no se destruye por métodos convencionales de cocina, a saber: freir, hornear, hervir, etc. Tampoco puede ser eliminada por los métodos convencionales de manejo y procesamiento del pescado tales como secar, salar, ahumar o congelar.

*Tercero,* la toxina no es detectable por el olor o apariencia del pez. Al presente no hay un método adecuado para descubrirla.

---

[1] Esta y las otras citas corresponden a las determinaciones fácticas del tribunal de instancia. Sentencia de 30 de julio de 1990.

Sólo ha podido aislarse por métodos químicos complejos. "[E]l origen e identidad de la o las toxinas envueltas, los organismos que la generan y transmiten así como los factores ecológicos responsables de su causa, no son completamente conocidos o entendidos." Anejo 6, pág. 17.

*Cuarto,* existen más de cuatrocientas (400) especies de peces susceptibles a esta clase de envenenamiento. Los brotes de envenenamiento son esporádicos e impredecibles en época y distribución geográfica. "No todos los peces de la misma especie que se capturan en el mismo sitio al mismo tiempo son tóxicos. El pez en sí no es afectado por la toxina." Anejo 6, pág. 17.

*Quinto,* el tratamiento médico es sintomático. No hay un antídoto conocido.

*Sexto,* no existe método disponible para detectar un pez ciguatóxico al ser capturado, como tampoco antes ni después de ser distribuido en el comercio. Se descubre con el consumo humano.

Estas realidades apoyan una sola conclusión: no hay forma de prevenir el daño que puede sufrir un consumidor.

"Conscientes del potencial peligro que representa par el consumidor la ingestión de varias especies de pescado, el Departamento de Recursos Naturales, al amparo de la Ley Núm. 82 del 7 de julio de 1979, [12 L.P.R.A. sec. 1351 *et seq.,*] publicó unos cartelones, para se exhibidos en los restaurantes, donde advierte al público del potencial peligro. El Restaurante demandado exhibía uno de éstos. . . . El pescado conocido como 'mero', que es el que se sirve en ruedas en el restaurante demandado y el cual causó el envenenamiento, no está entre las especies prohibidas por el Departamento de Recursos Naturales." Anejo 6, pág. 19.

## II

La doctrina de responsabilidad absoluta por productos alimenticios expuesta en *Castro v. Payco, Inc.,* 75 D.P.R. 6 (1953), y en *Mendoza v. Cervecería Corona, Inc.,* 97 D.P.R. 499 (1969), no gobierna la situación de autos. Esa responsabilidad persigue proteger al consumidor contra el descuido del manufacturero.

La intoxicación por ciguatera no es el resultado de un proceso de fabricación o manufactura. Tampoco es el producto de ingredientes o técnica de cocina. Es causada por una o varias toxinas acumuladas en el músculo del pescado. Al decir del ilustrado foro de instancia, la "mano y la voluntad del hombre no intervienen en forma alguna en este proceso natural". Anejo 6, pág. 22.

En resumen, estamos ante un evento fortuito que no genera responsabilidad. *Jiménez v. Pelegrina Espinet*, 112 D.P.R. 700 (1982). La única forma de prevenir el daño es la abstención total.